IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ANTHONY MARES,

    Plaintiff,

v.

CITY AND COUNTY OF SAN FRANCISCO, and DOES 1 through 10,

    Defendants.

No. C 04-02558 JSW

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY ADJUDICATION**

Now before the Court is the motion for summary judgment filed by the City and County of San Francisco ("the City"). Having carefully considered the parties' arguments, the relevant legal authority, and having had the benefit of oral argument, the Court hereby GRANTS the City's motion for summary judgment.

**FACTUAL BACKGROUND**

The City hired Plaintiff Anthony Mares, Jr. ("Mares") as a recruit at the San Francisco Police Academy in June 2001. (City's Ex. 20 (Deposition of Anthony Mares, Jr. ("Mares Depo.") at 10:10-11.) On August 23, 2001, while standing in uniform in front of a Burger King restaurant, Mares told fellow recruits a story about a man who raised his shirt and showed Mares his "fake boobs." (City's Ex. 8; Ex. 20 (Mares Depo.) at 13:3-16:13, 49:9-56:3.) Approximately one month later, on September 21, 2001, Mares made another comment while on duty in the Police Academy locker room. After another recruit asked what time it was and an

African-American recruit answered, Mares said "you can never trust a black man's watch" or "you can't trust this black guy's watch." (City's Ex. 3; Ex. 20 (Mares Depo.) at 23:6-24:24.)

The City discharged Mares from the Academy on September 24, 2001. In a letter dated October 3, 2001, the City informed Mares the reason for his discharge was his "inappropriate comments regarding females" made on August 23, 2001 and his conduct on September 21, 2001, in violation of the Police Department's General Order 11.07, Discrimination and Harassment. (City's Ex. 10.)

The City provided Mares with a hearing on November 15, 2001 regarding his termination. (City's Ex. 20 (Mares Depo.) at 29:9-33:5.) At the hearing, Deputy Chief William Welch determined that the City was justified in discharging Mares from the Academy but also found that Mares was eligible for future employment with the City. (Declaration of William Welch, ¶¶ 4-5.) The Chief of Police, Fred H. Lau, adopted Welch's recommendation. (City's Ex. 12; Ex. 20 (Mares Depo.) at 70:5-71:4.) Mares then reapplied to the Academy but was rejected based on his psychological evaluation. (City's Ex. 20 (Mares Depo.) at 85:5-86:13; Declaration of Antonio Parra at ¶¶ 7-8.)

Under the first claim in his First Amended Complaint ("FAC"), entitled "Injunctive Relief/Writ of Mandate," Mares alleges that Defendant violated his "civil rights and right to due process by expelling him from the San Francisco Police Academy training program without cause and on the basis of false and unproven charges, and by upholding the expulsion on the basis of a charade of a hearing, all in violation of California law." (FAC ¶ 14.) Under his second claim, entitled "Monetary Damages Based on Violation of Civil Rights," Mares alleges that the City violated his "state and federal civil rights by wrongfully depriving him of a vested interest through an unequal and unfair treatment of [him]." (FAC ¶ 17.) Finally, under his third claim entitled "Breach of Contract," Mares alleges the City breached an agreement not to terminate his employment without good cause. (FAC ¶ 21.)[1]

---

[1] Both parties submitted evidentiary objections, but much of the evidence objected to was not necessary to the resolution of this motion. Therefore, the Court need not rule on the admissibility of such evidence at this time. To the limited extent the Court relied on evidence objected to in resolving the City's motion, the objections are overruled.

**ANALYSIS**

**A.    Legal Standard**

Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A principal purpose of the summary judgment procedure is to identify and dispose of factually unsupported claims. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323-24 (1986).

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits which demonstrate the absence of a genuine issue of material fact. *Id.* at 323. Once the moving party meets this initial burden, the non-moving party must go beyond the pleadings and by its own evidence "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (quoting *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th Cir. 1995)) (stating that it is not a district court's task to "scour the record in search of a genuine issue of triable fact"). If the non-moving party fails to make this showing, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

**B.    Mares' Claim for Violation of His Federal Civil Rights Does Not Survive Summary Judgment.**

Mares contends that the City violated his "federal civil rights by wrongfully depriving him of a vested interest through an unequal and unfair treatment of [him]." (FAC ¶ 17.) 42 U.S.C. § 1983 ("Section 1983") provides the exclusive remedy for claims alleging violations of federal constitutional rights. *Bank of Lake Tahoe v. Bank of America*, 318 F.3d 914, 917 (9th Cir. 2003).

The City argues that summary judgment is proper on Mares' claims relating to his federal civil rights because, *inter alia*, Mares has no evidence that the City's conduct in

discharging Mares was part of an official policy, practice or custom. To establish liability against a municipal entity under 42 U.S.C. § 1983, a plaintiff must demonstrate that their injury was caused by an official policy, practice or custom of the city. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *see also McInerney v. City & County of San Francisco*, 668 F. Supp. 1352, 1354-55 (N.D. Cal. 1986) ("Under *Monell* . . . a plaintiff cannot sue a municipality on a civil-rights violation unless he demonstrates that the violation was the result of an official municipal policy."). As the court explained in *McInerney*, "[a]t the very least the plaintiff must make an affirmative link between the policy and the particular constitutional violation alleged." *Id*. In opposition to the City's motion, Mares does not submit any evidence that his alleged injuries were caused by an official policy or custom. Accordingly, the Court grants the City's motion on Mares' claim for violation of his federal civil rights.

Alternatively, even assuming *arguendo* that Mares sufficiently demonstrates an official policy or custom, Mares' Section 1983 claim fails for additional reasons. To the extent Mares's claim is premised on violations of due process, for the reasons discussed below, Mares fails to demonstrate he was entitled to a hearing. At the hearing on this motion, Mares clarified that his federal civil rights claim is also based on a claim of retaliation. As discussed below, whether this retaliation claim is premised on Title VII of the Civil Rights Act of 1964 or the First Amendment, Mares has no evidence to demonstrate the required elements of such claims.

       **i.**    **Mares' Due Process Claim**

Mares contends that his federal civil rights were violated when Defendant discharged him for making comments without giving him a proper hearing and opportunity to defend himself. Determining whether the City deprived Mares of due process involves a two-part inquiry: (1) whether the City deprived Mares of a protected interest, and (2) if so, what process Mares was due. *See Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428 (1982). Thus, to state a procedural due process claim, Mares must establish that he had a protectable interest. *See Bateson v. Geisse*, 857 F.2d 1300, 1305 (9th Cir. 1988).

When he was discharged, Mares was a probationary employee and thus, had no protectible property interest in continued employment. Nor did Mares have a protectible interest

4

in being rehired. Mares does not dispute these points. Rather, he contends that because the reason he was terminated was a stigmatizing one, he was entitled to have a pre-termination hearing in order to clear his name. Due Process requires the City to provide Mares a hearing to refute the charges against him if they are stigmatizing but only if he disputes the basis upon which he was discharged. *Codd v. Belger*, 429 U.S. 624, 627 (1977). As the Court explained in *Codd*, "the remedy mandated by the Due Process Clause of the Fourteenth Amendment is 'an opportunity to refute the charge. ... The purpose of such notice and hearing is to provide the person an opportunity to clear his name. ... But if the hearing mandated by the Due Process Clause is to serve any useful purpose, there must be some factual dispute between an employer and a discharged employee which has some significant bearing on the employee's reputation." *Id*. In *Codd*, the employee's failure to affirmatively assert that the reason for his termination – that he allegedly attempted to commit suicide – was substantially false was fatal to his claim. *Id*. at 627.

Similarly, here, Mares does not present any evidence demonstrating that the reason for his termination – the two comments made about "fake boobs" and "black man's watch" – were substantially false. The City terminated Mares for making inappropriate comments regarding females and for making a comment regarding not trusting a black man's watch, in violation of the San Francisco Police Department's General Order 11.07, Discrimination and Harassment. (Defendant's Ex. 10.) Mares does not dispute that he made these comments, but argues instead that these comments did not constitute "sexual harassment" or "racial discrimination."[2] Thus, Mares does not dispute the facts underlying his discharge – that he made these comments – but only disputes how the City evaluated his comments. Without a substantial factual dispute regarding the reason for his termination, Mares cannot demonstrate that he was entitled to a

---

[2] Mares initially argued that he only stated "you can't trust this black guy's watch" as opposed to "you can never trust a black man's watch," and that there is a "world of difference" between these two statements. (Opp. Br. at 12.) However, at the hearing on the City's motion, Mares conceded that there was no material dispute at to whether he made the comments for which he was discharged.

5

hearing to clear his name. *Codd*, 429 U.S. at 627. Accordingly, the Court grants the City's motion for summary judgment as to Mares' federal civil rights claims.[3]

### i. Mares' Purported Retaliation Claim

In opposition to the City's motion, Mares made several references to "retaliation," but it is not clear from his complaint whether and on what basis Mares is asserting a claim for retaliation. At the hearing, Mares conceded that his complaint was not clear and sought leave to amend to state a claim for violation of his federal civil rights based on the City's failure to rehire Mares because he filed the instant lawsuit. The Court denies Mares' request to amend at this late stage, after discovery has closed, based on the prejudice it would cause the City and because it would be futile. *See Flowers v. First Hawaiian Bank,* 295 F.3d 966, 976 (9th Cir.2002) ("A district court ... does not abuse its discretion in denying leave to amend where amendment would be futile."); *see also Roberts v. Arizona Bd. of Regents,* 661 F.2d 796, 798 (9th Cir.1981) (affirming denial of leave to amend complaint raised at the eleventh hour, after discovery was virtually complete and a motion for summary judgment was pending before the court).

If Mares intended to assert a Section 1983 claim for retaliation premised on Title VII, he would need to present evidence that he exhausted his administrative remedies by filing a claim with the Equal Employment Opportunity Commission and that reason he was not rehired was because he challenged an employment practice made unlawful by Title VII. *See* 42 U.S.C. §§ 2000e-3(a), 2000e-5(b). Mares has not presented any evidence, nor argued that he could present evidence if given another opportunity, of either requirement. If Mares' purported retaliation claim is premised on a denial of free speech protected by the First Amendment, Mares would need to demonstrate he engaged in speech that was constitutionally protected because it related to a matter of public concern and that such speech was the motivating factor for the City's

---

[3] To the extent Mares is asserting a claim for violation of due process under the California Constitution, the City's motion is granted for the same reasons. To bring a claim for violation of due process based on termination for stigmatizing reasons, California courts similarly require a plaintiff to dispute the underlying charges. *Lukin v. City and County of San Francisco*, 187 Cal. App. 3d 807, 812 (1986) ("although there are situations where a probationary employee may not be discharged without opportunity for hearing if the discharge inflicts a stigma, such opportunity is not required when the employee does not deny the allegations which give rise to a stigma").

6

decision not to rehire him. *See Coszalter v. City of Salem*, 320 F.3d 968, 973 (9th Cir. 2003). Again, Mares has not presented, or argued that he could present, any evidence of these requirements. Accordingly, the Court will not allow Mares leave to amend at this late stage.[4]

## CONCLUSION

For the foregoing reasons, the Court GRANTS the City's motion for summary judgment.

**IT IS SO ORDERED.**

Dated: November 1, 2005

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

---

[4] Mares also alleged a state law claim for breach of contract but at the hearing on the City's motion he conceded that this claim fails as a matter of law and therefore withdrew this claim.